IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NANCY LOUISE VANDERVOORT,

      *Plaintiff,*

   v.

NORTH ALLEGHENY SCHOOL DISTRICT
and MARIJANE TREACY,

      *Defendants.*

Civil Action No. 2:23-cv-433

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

    *Pro se* Plaintiff Nancy Louise Vandervoort ("Vandervoort") initiated this lawsuit against Defendants North Allegheny School District ("School District") and Marijane Treacy ("Treacy"), in her official capacity as Title IX Coordinator and Human Resource Director (collectively, "Defendants"), after being terminated as a paraprofessional special education assistant for job abandonment. (ECF No. 1). Her suit contains eleven claims.[1][2] (ECF No. 17).

---

[1] Vandervoort's claims as set forth in her second amended complaint "(Second Amended Complaint") are as follows:  First Claim for Relief–Title 42 U.S.C. §2000(e)(5), 42 U.S.C. §1981, 42 U.S.C. § 1983 and 42 U.S.C. § 1985; Second Claim for Relief–Violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101; Third Claim for Relief–42 U.S.C. §12112–Discrimination, retaliation, wrongful termination, failure to accommodate EUA (Emergency Use Authorization) Statutes 21 U.S.C. § 360 bbb-3; Fourth Claim for Relief–Age Discrimination in Employment Act of 1967, 29 U.S.C. 621 *et seq.*, Intentional Infliction of Emotional Distress; Fifth Claim for Relief–Violation of 42 U.S.C. Ch. 126, Equal Opportunity for Individuals with Disabilities; Sixth Claim for Relief–Violations of 29 C.F.R. 1630-Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act; Seventh Claim for Relief–Violation of 42 U.S.C. § 2000e-3, Unlawful Employment Practices, Title VII of the Civil Rights Act of 1964; Eighth Claim for Relief–42 U.S.C. Ch. 126 § 12101 *et seq.*, Title I § 35.134 and Section 504 (Retaliation and Coercion); Ninth Claim for Relief–Family Medical Leave Act ("FMLA") 29 U.S.C. §§ 2601, 2612, 2615 *et seq.*, Interference in violation of FMLA, retaliation in violation of the FMLA; Tenth Claim for Relief–

Pending before the Court is Defendants' Motion for Summary Judgment.   (ECF No. 36). Discovery has revealed that Vandervoort's suit is nothing more than an attempt to avoid the consequences of her own actions.   The record reveals that the School District communicated all pertinent FMLA information to her and worked with her throughout her FMLA leave.   Despite being given the choice to continue on FMLA leave by obtaining renewed medical authorization, Vandervoort apparently decided to take a stance against the School District's COVID-19 face covering policy by abandoning her job and failing to cooperate with the School District.   She is dissatisfied with the ramifications of her decision and comes to federal court to air her laundry list of grievances.   For the reasons set forth below, the School District's motion will be granted in its entirety.   Judgment will be entered in favor of Defendants.

## I.   FACTUAL BACKGROUND

In   2009,   Vandervoort   began   her   employment   with   the   School   District   as   a paraprofessional substitute.   (ECF No. 48, p. 2).   In 2013, she began working as a long term substitute.   She continued with long and short term substitute assignments until the 2018 school

---

Breach of Contract and Wrongful Termination; and Eleventh Claim for Relief–Violation of Article I §§ 1 and 7 of Pennsylvania State Constitution, Violation of First, Fifth and Fourteenth Amendments of the United States Constitution.   (ECF No. 17, pp. 31–48).

[2] This is Vandervoort's second federal lawsuit against the School District.   On September 22, 2001, she commenced a lawsuit at Case No. 21-cv-01264 against the School District, its superintendent, and members of its school board.   Her action sought equitable, compensatory, and punitive damages for alleged violations of her rights under 42 U.S.C. § 1983, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1967, the Pennsylvania Human Relations Act, and the Pennsylvania Constitution.   Vandervoort's allegations arose from the School District's face covering mandate in response to the COVID-19 pandemic and how it affected her ability to perform her job.   On March 30, 2022, the Court granted Defendants' motion to dismiss and entered final judgment in the form of dismissal of Vandervoort's amended complaint.   (Case No. 21-cv-01264, ECF Nos. 29–31).   The Court found all claims related to the School District's face covering mandate to be moot.   (ECF No. 29).   Because Vandervoort failed to exhaust her administrative remedies for her employment discrimination claims, those claims were dismissed without prejudice for her to pursue relief after she exhausted her administrative remedies.

year.  She then worked as a paraprofessional special education assistant for the 2019–2020, 2020–2021, and 2021–2022 school years.  (*Id.*).  As a paraprofessional employee, Vandervoort was subject to a collective bargaining agreement ("CBA"), which established that medical verification could be required in the event that sickness or injury exceeded three consecutive workdays.  The CBA further provided that any leave under the FMLA would run concurrently with sick leave.  (*Id.* at 3–4).

On March 13, 2020, the School District was subjected to a mandatory shutdown due to the COVID-19 pandemic.  An email was sent to all staff on June 23, 2020, that addressed the School District's response to the pandemic, and it also contained an updated Health & Safety Plan as well as a Return to School Education Plan.  (*Id.* at 5).  In August 2020, Vandervoort called the School District's Human Resources Department inquiring about accommodations if she was unable to wear a mask.  (R-149).[3]  Treacy called Vandervoort on August 14, 2020, and left a voicemail message.  (R-137).  They spoke on the telephone on August 17, 2020, and Vandervoort sent a follow up email on August 18, 2020, to Treacy.  In it, Vandervoort stated that she spoke with her paraprofessional representative and heard about available cyber positions for paraprofessionals but she missed the posting.  Vandervoort also stated that "my Dr is out this week so will send out info after I speak with her again upon her return."  (R-144).  Treacy responded,

> in your email, you indicated a health condition may prevent you from performing the functions of your position, specifically the wearing of a mask in school. In light of this information, the North Allegheny School District recognizes that you may be a qualified person with a disability under the Americans with Disabilities Act (ADA). Should you request various accommodations due to a disabling

---

[3] Citations to "R-" followed by a number refer to pages of Defendants' Appendix, which is contained at ECF No. 39.  The Court will utilize the numbering used by Defendants that appears on the bottom right hand corner of each page of their Appendix.

condition, as an employer, the District has the right to request and obtain medical information from your treating physicians.

(R-141).   She went on to explain that the District was prepared "to initiate an informal, interactive process with you in the event you believe you are in need of a reasonable accommodation that will enable you to perform your job functions," but that it was up to Vandervoort to inform the School District if she believed she was disabled and entitled to an accommodation.  (*Id.*).  Treacy explained that School District would need from Vandervoort,

- Medical documentation regarding your condition.  This could be accomplished by having your treating physician(s) forward copies of your medical file;
- A Narrative Report setting forth the physician's diagnosis and prognosis;
- Any accommodations which a physician wishes to suggest; and
- A statement explaining what limitations you may have, visa-a-vis your school duties.

(*Id.*).  The email concluded, "Unless and until I hear from you, or I receive the above referenced medical information, I and the District will assume you believe yourself to be able to meet the requirements of your current position."  (*Id.*).

On August 24, 2020, Ms. Vandervoort sent an email to Joe Sciullo ("Sciullo") requesting to be moved to a cyber position.  In their email exchange, Vandervoort stated that she was requesting the move because she could not wear a mask.  (R-145–47).  On August 28, 2020, Sciullo notified Vandervoort that she was administratively transferred to a position with North Allegheny Cyber Academy ("NACA") due to staffing needs.  Hours later, Vandervoort emailed Sciullo stating that she was able to wear a face shield in-person in the classroom setting.  (ECF No. 48, p. 10).

On September 1, 2020, Treacy informed Vandervoort via email that she was permitted to wear a face shield had she remained working in-person in the classroom, that the School District had received no medical information from Vandervoort, and that her assignment was not a

medical accommodation. (R-143). Vandervoort acknowledged that she understood this email to be another offer to engage in a discussion about a medical accommodation, and that she had to provide medical information to receive a formal accommodation. (ECF No. 48, p. 11). Significantly, in a September 1, 2020 email to Treacy, Vandervoort stated, "I can not [sic] say I'm disabled because I'm not dishonest and it's the mask causing a problem. …. I will never say I'm disabled." (R-148).

During the 2020-2021 school year, Vandervoort worked under a one-year contract with NACA. She sent no medical information to the School District during the school year and she made no further communications about her medical conditions or an accommodation. (ECF No. 48, pp. 8, 12).

The School District continued to require face coverings for the 2021-2022 school year. Vandervoort was assigned for the school year as in-person support for students at Hosack Elementary School, which was the position she held prior to the COVID-19 pandemic. (*Id.* at 13). Vandervoort reported to work at Hosack Elementary on August 17, 2021, without a facial covering. She was sent home due to her refusal to wear a face covering and for insubordination. (R-182); (P-36).[4] That same day, Treacy sent an email to Vandervoort noting that the School District "ha[s] no record of any medical documentation supporting an accommodation to the face covering requirement. We sent you information last year (and are happy to do so again if needed) on how to request an accommodation and you indicated you did not have a disability and did not submit anything." (R-138). Treacy reiterated that the School District "need[s] medical documentation" and "suggested accommodations from your healthcare provider in order

---

[4] Citations to "P-" followed by a number refer to pages of Vandervoort's Appendix, which is contained at ECF No. 46-1 through 46-4. The Court will utilize the numbering used by Vandervoort that appears on the bottom right hand corner of each page of her Appendix.

to engage in the interactive process to see what may be possible." (*Id.*).  The email concluded by noting, "Unless and until we have medical documentation to review the need for an accommodation, and review potential accommodations, you will need to wear either a compliant face mask or face shield at work.  You can either send documentation via email or fax." (*Id.*).

The next day, August 18, 2021, Vandervoort reported to work at Hosack Elementary without a facial covering and left after refusing to wear one.  Treacy emailed Vandervoort about her failure to work and again offered to discuss accommodations.  She informed Vandervoort that her absence was unapproved and it would be marked as a personal day.   (R-82). Vandervoort sent an email to Superintendent Melissa Friez recounting her version of what occurred when she reported to work that same day.  (ECF No. 48, p. 16).  She explained:

> Another point related to this is that [l]ast year when the school year began HR sent out an email to all asking that we contact them if there are any accommodations that we would like to discuss with returning to work in person masked.
> I contacted HR and they basically said I would have to turn over my entire medical history and they would then send me to NASD Doctors to determine if I was disabled. I told HR that I was not disabled and was uncomfortable turning over my medical history to them. I am not unable to work and never have been. I've work [sic] at NASD since 2009.  In many schools but landed in K5.
> I simply stated I am not disabled but the wearing of a mask could cause me to pass out in the stair wells or in the halls when traveling with students all day.  As well as the playground.

(R-85).  Attached to the email was a position statement of Vandervoort setting forth medical and legal findings about the ineffectiveness and unconstitutionality of face coverings as well as information from a doctor's online paper.  (R-85–89); (ECF No. 48, p. 17).

Also on August 18, 2021, the school board of the School District voted to make face coverings optional, but strongly recommended them for all students and staff.  (ECF No. 48, p. 17).  Consequently, on August 19, 2021, Treacy emailed Vandervoort informing her that face coverings were now optional, and Vandervoort was required to report to work despite the

ongoing investigation into her behavior.[5]  (*Id.* at 17–18).  In the ensuing days, emails and information were provided by School District personnel about how to apply for a position with NACA by Sunday, August 22, 2021.  (R-82).

Vandervoort did not report to work on August 23, 2021, or August 24, 2021.  (*Id.* at 18). At the close of business on August 24, 2021, Treacy sent Vandervoort an email outlining the events from August 17th to that day, noting that Vandervoort "had not shown up for work or provided valid, documented reasons for … absences."  (R-83).  Regarding an email Vandervoort sent to another School District employee that day stating she would be taking some personal days, Treacy informed Vandervoort:

> Your request did not comply with the provisions of your collective bargaining agreement (pp. 39-40).  You also entered personal days into absence management for August 23-31, despite not having days to use to cover the time.  Your request is in excess of permissible use and does not follow process.  It also does not provide a valid excuse for the days.  If you need a leave of absence for personal or medical reasons, please let us know.  You can contact me or Katie Goehring, our Benefits Manager.  We are happy to assist you.  Truly.

(*Id.*).  Treacy went on to state, "If you need a leave of absence for personal or medical reasons, we ask that you follow procedure and request a leave of absence and follow the timelines for submitting documentation."  (*Id*).  The email concluded:

> We hope you do not choose to abandon your position, Nancy.  If you need time off, please reach out to Katie and see what type of leave may work for you.  But please understand, without a valid and supported reason for your continued absences, we will have no choice but to follow a path of asserting job abandonment in addition to the insubordination and failure to use proper call off procedures we are already investigating.  It is our hope we can clear this up and move forward.  You need to take steps to demonstrate you do as well.

(*Id.*).

---

[5] A federal district judge approved a temporary restraining order and as of August 24, 2021, face coverings were reinstated in the School District.  (R-80).

On August 25, 2021, Vandervoort responded via email that she was not abandoning her position, and due to problems with the computer system, she accidentally requested personal days instead of sick days. (R-81); (ECF No. 48, p. 20). Treacy responded:

> You will still need to contact Katie Goehring about a leave of absence, as your requested use of three or more sick days requires verification (page 37 of your CBA, and Board policy 534). You will need to be approved for a leave of absence to use sick time in excess of three or more days. Currently you are on unpaid and unapproved absences. As previously requested, please contact Katie by Thursday, August 26, 2021 at noon to determine which leave of absence may apply to your situation and she can forward you paperwork

(R-81). On August 26, 2021, Vandervoort emailed Katie Goehring ("Goehring") stating, "I was directed to you to get information on possible types of leave I assume once I use up my sick leave. 26 days. Please send information to this email address for my review. I will reach out if I have and questions." (R-84). Goehring responded,

> Thank you for reaching out about your recent absences. At this time and per Marijane's previous email, you are unable to use your sick days as you are on an unapproved, unpaid absence. If you are seeking to use your accumulated sick days, you must first seek approval using the attached Family Medical Leave Act certification which must be completed in tandem with your treating healthcare provider. As Marijane mentioned previously, your collective bargaining agreement requires documentation from a healthcare provider when three or more sick days are used consecutively.
>
> I look forward to receiving your completed FMLA certification no later than September 10, 2021. You will not be permitted to use your intended sick days without this approval in place. Please let me know if you have any questions.

(R-84). Attached to the email were all the documents Vandervoort needed to complete. (*Id.*).

Vandervoort received a medical diagnosis from her physician of "situational anxiety related to mask wearing and COVID" (R-93), and sent the paperwork for leave under FMLA to School District personnel on September 10, 2021. (R-90–93). Additional information was provided by Vandervoort's physician (P-99), and on September 22, 2021, the School District

approved her FMLA request for a 12-week period beginning on August 17, 2021, and ending on

November 8, 2021. (R-96). The following was set forth in the approval letter:

> Please note: You are required to present a fitness-for-duty release from your doctor before returning to work.

> Please note: You will receive payment for your 17.5 accumulated sick days on October 1, 2021, which account for your paid leave through the morning of September 16, 2021. You will need to submit the Unpaid leave of Absence Form for Board approval for time thereafter (beginning September 16, 2021, p.m.)

> If you carry District benefits, you will owe the full premium cost beginning December 1, 2021 if you have not returned to work by that date and are on an unpaid leave of absence. Otherwise, you will owe the full cost of benefits beginning the first of the month following your last paid work day, whichever is later.

(*Id.*). Vandervoort was further advised by Goehring, "Per your CBA, the District has applied

your accumulated sick leave retroactively as that must be used before you request a protected

unpaid leave under your FMLA certification. Please see the attached approval for details. I have

attached the Unpaid Leave of Absence form to account for the rest of your leave. Please

complete and return the Unpaid Leave of Absence form to my attention." (R-94). Then, on

September 29, 2021, Goehring sent Vandervoort a letter noting that Vandervoort might qualify

for long-term disability if she was on a work or non-work related disability leave for more than

thirty continuous calendar days, and Goehring enclosed the relevant forms for completion. (R-

104-26).

On October 31, 2021, Vandervoort sent an email requesting an extension of unpaid leave

once the FMLA period expired. She was informed by Goehring that her FLMA excused her

absence through November 4, 2021, and that an updated doctor's note was needed to support her

request for continued leave. (R-101–02). On November 5, 2021, Vandervoort's doctor issued a

letter stating that Vandervoort was "advised to be out of work from 11/9 – 12/8. Please extend

her leave." (R-99). That day, the School District granted an extension of Vandervoort's FMLA leave. (ECF No. 48, p. 25). Goehring informed Vandervoort on November 5, 2021, "if you do not return December 9th, your District coverage will end retroactively back to November 30th with the option to continue coverage at the full premium cost beginning December 1st, 2021." (R-100).

On November 22, 2021, Vandervoort began an email chain regarding a paycheck she received. (R-127–30). Ultimately, Goehring answered Vandervoort's questions as follows:

Here are the dates of pay per my records and per the direction you gave me:

8/17/21PM – 8/19/21 — 2.5 personal days
8/23/21 – 9-22-21 - unpaid FMLA
9/23/21 — 10/18/21(AM) — 17.5 sick days
10/18/21(PM) - .5 personal day
10/19/21 — 11/2/21(AM)— 8.5 sick days
11/2/21(PM) — 12/8/21 — approved unpaid leave

You sent me an email on 11/2/21 stating that you would like to use your remaining (though unaccrued) sick days, Those have been applied for dates 10/19/21 — 11/2/21(AM) as stated above, You are correct that if you do not return to work, you will owe the payment for these days back to the District. Again, these were applied according to your direction on your 11/2/21 email to me.

As for your health insurance, it will end November 30, 2021 due to FMLA ending.  It cannot end any sooner due to IRS regulation since you do not have a qualified life event.

As a reminder, please supply a release from your treating healthcare provider before returning December 9th.  Should you need additional leave, you will need to submit updated documentation from your treating healthcare provider prior to December 9th.

(R-128).

Goehring emailed Vandervoort on December 1, 2021, stating, "As we are approaching your anticipated return date, can you please supply a release from your treating healthcare provider for your return on December 9th?" (R-127).  She again advised Vandervoort that if she

required additional leave, Vandervoort needed to submit updated documentation from her healthcare provider. (*Id.*). Receiving no email response, on December 6th and December 7th, Goehring attempted to reach Vandervoort by telephone. (R-150); (ECF No. 48, p. 27). On December 8, 2021, Goehring sent Vandervoort an email as it was the last day of Vandervoort's approved unpaid leave. She informed Vandervoort:

> It is necessary that you either supply a full release from your treating healthcare provider to return tomorrow, or submit documentation from your provider to support an extension of your unpaid leave of absence due to medical need. I left you voicemails to this regard on December 6[th] and 7[th], but when I tried calling today, it seems your voice mailbox is full and cannot accept new messages.
>
> The District wishes to support you in either returning from leave or extending your time off if medically needed. Please remember that the face covering requirements remain in place should you supply a release to work tomorrow, you will be required to comply with the state mandate by wearing a face covering.

(R-131). Vandervoort sent a separate email that same day to Goehring stating, "I am aware of the Doctors note to return to work, but at this time I have not contacted my health care provider. (R-132). Vandervoort went on to state:

> I would like to know what reasonable accommodations you can offer me to continue my employment with NASD. I believe that by you asking me to return to work, knowing I would not be allowed to even enter the building is once again a threat. And the fact if I were to ask for more unpaid time off to attempt to preserve a job, with NA, you having to then entertain the thought of a leave extension is also a threat/coercion.
>
> Do you accept full liability for:
> NOTICE TO AGENT IN NOTICE TO PRINCIPLE, NOTICE TO PRINCIPLE IS NOTICE TO AGENT - WITHOUT PREJUDICE
> 1. You confirm in writing that I will suffer no harm.
> 2. Should you agree to their terms that it will be signed off by the Board and the Superintendent as well as a fully qualified doctor who will take full legal and financial responsibility for any injuries occurring to myself, and/or from any interactions by authorized personnel regarding not only the mask for any vaccination requirements.
> 3. In the event that I should have to decline the offer of masking, testing and vaccination, please confirm that it will not compromise my position and that I will not suffer prejudice and discrimination as a result.

11

4. To affirm the intent of any written communication is bona fide, sincere, and not misleading, I direct you to deliver to me with an equitable time of ten 10 days of this email (i.e. Notice), your evidence sustaining the following claims, signed, and sealed; 5. Also please provide any proof as an employee of NASD you the authority over me, as a non-corporate woman, how that arose and the nature of the source or your authority to make decisions that deprive me of my entitlements, in regard to my capacity within the company/organization without my expressed written consent.

6. Proof that the COVID-19 protocol with the use of mask, testing and vaccination policy of the NASD that you represent applies to a living man or a living woman.

7. Proof that the approved legal status of the mask, testing and any vaccine and if it is an unauthorized nonapproved experimental?

8. Proof of the details and assurances that the mask, testing and vaccine has been fully, independently, of any monetary incentive to NASD, been rigorously tested against control groups and the subsequent outcomes of those tests?

9. Proof the entire list of contents of masking, testing and vaccine I may be forced to participate and receive is not and will not be toxic to the body?

(*Id.*).

On December 13, 2021, Treacy emailed Vandervoort as follows:

Good morning. I wanted to reach out and check on your work status. As you are aware, your Board-approved leave of absence expired last Wednesday, December 8, 2021.  We have not yet received a medical release for you to return to work, or a medically-supported request to extend your leave.

As your medical excuse for absence related to the face covering requirement, I wanted to see if you needed an extension of leave while the face covering requirement is still in place. Based on the Board of School Director's recent motion (passed December 8, 2021), face coverings will continue to be required through January 17, 2022, and will be only strongly recommended beginning January 18, 2022.  If your healthcare provider recommends you remain on leave through January 17, 2022, or some other date, please provide a copy of correspondence from the provider and we can work to get your leave extended.

In the alternative, please provide a medical release to return to work.

We need to have an update on your status to not only account for your employment, but also to provide staffing for the students impacted by your continued absence.

We continue to be open to discussing leave options, but need documentation from your healthcare provider to support the same.  If you prefer we communicate with

your provider to obtain the documentation, please let us know.  We are happy to help.

(P-196).  Vandervoort replied in a separate email:

> Hello Marijane, I'm sure you were informed of this email that I sent Katie last Wednesday 12-8-21. But just in case, I wanted to make sure you had a chance to see it. There was no mention of what I requested in that 12-8-21 email when you reached out to me this morning.

(ECF No. 48, pp. 28–29); (R-153).  Attached to the email was Vandervoort's December 8, 20221

email to Goehring.  (*Id.*).  Treacy responded to Vandervoort by email on December 21, 2021, as

follows:

> I have seen the email you sent to Katie Goehring and do not understand some of your requests.  We have made no mention of vaccines or testing in our requests to you.  We are simply trying to either account for your time off or return you to work.  We are not threatening you or intending to harm you in any way.
>
> As an employee of the District, you are either expected to work or account for your absence.  Your previously approved leave of absence expired December 8, 2021.  Since that time, your absences have been unexcused.  We are trying to remedy that by either receiving a return to work release from your healthcare provider or a request for your healthcare provider for an extension of your leave.
>
> As you have previously provided a medical excuse that prevented you from working this school year as a result of a face covering mandate that is still in place, we are offering to extend your previously approved leave of absence.  To do so, we need a letter from your healthcare provider that notes the condition which previously prevented you from working continues and that an extension of leave is requested until a certain date in time.  In the alternative, if your condition no longer prevents you from working, please provide a note from your healthcare provider indicating when you may be released to return to work.  As noted in your original leave approval, you need to present a fitness for duty release from your doctor before you may return to work.  If you need assistance in obtaining one, we can reach out to your provider if you provide us with permission to do so.  We can get you a form to do so if you desire.
>
> Again, we are not interested in harming you and have not threatened you.  We are simply trying to follow up on previous directives from your healthcare provider which prevented you from working.

We are interested in accounting for your absences and providing staffing coverages for our students. As an employee, you need to account for your absences.

I thank you in advance for providing the requested documentation. We look forward to your eventual return to work if able.

(R-152–53).  On January 4, 2022, Treacy emailed Vandervoort stating:

I wanted to reach out once again seeking documentation from you that either releases you to return to work or seeks a medically-supported extension of your previous leave of absence.  As you are aware, your previous leave of absence expired on December 8, 2021.  We have requested information from you for over a month to justify your absence or return you to work, but have not received anything.  As noted in my December 21 email, we must provide staffing coverage for our students and your continued unaccounted absences make that difficult.

At this time, I ask that you provide the requested information by Friday, January 7, 2022, or we unfortunately will need to move forward with a disciplinary process for job abandonment.

We hope to hear from you and receive the requested documentation.

(R-152).

On January 13, 2022, Treacy emailed a *Loudermill*[6] notice to Ms. Vandervoort, stating that a *Loudermill* conference was scheduled for January 19, 2022.  Ms. Vandervoort responded that she was rejecting the offer to attend the *Loudermill* conference.  (ECF No. 48, pp. 32–33); (R-150–51).  Another *Loudermill* conference was scheduled for January 24, 2022, which Vandervoort opted not to attend.  (P-219, 223).  On January 25, 2022, Vandervoort was notified that she was being placed on disciplinary suspension, without pay, pending termination.  The letter noted, in part:

---

[6] The United States Supreme Court has "described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.'"  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, (1971)).  "This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment."  *Id.*  (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 569–70).  A *Loudermill* hearing gives an employee an opportunity to respond to the charges.

You submitted paperwork and medical documentation to be approved for a leave of absence from August 23, 2021 through December 8, 2021. Prior to the expiration of the leave of absence on December 8, 2021, we contacted you to submit either a release to return to work from your healthcare provider, or documentation from your healthcare provider to support an extension to your leave of absence. Despite multiple attempts to secure this information from you, you have provided no reason or support for your continued absences. Currently, you are accumulating excessive unapproved and unpaid absences. Your failure to account for your current or future anticipated absences has also impacted the District's ability to plan for staffing in the special education area.

As you have not accounted for your absences, have failed to provide documentation to return from or extend your expired leave of absence, and have not followed the District's sick and other leave of absence policies and processes, despite repeated opportunities to comply, the District has concluded that you have willfully neglected your duties, and abandoned your position. In addition, you have engaged in persistent and willful violation of or failure to comply with the school laws of the Commonwealth, including established Policy of the Board of Directors.

Effective immediately, the District is placing you on a disciplinary suspension, without pay, pending termination

(P-224). The conditions of her suspension were outlined. (*Id.*). At the beginning of March, Vandervoort was issued a notice of statement of charges ("Statement of Charges") concluding with the recommended termination of her employment. She had ten days to request a hearing before the board of school directors or request to proceed to arbitration under the provisions of her CBA. (P-225–30). No response was received from Vandervoort. The board of school directors for the School District terminated her employment, effective March 23, 2022, based on the information contained in the Statement of Charges. (P-233).

## II.     STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The Court must view the evidence presented in the light most favorable to the nonmoving party.  *Id.* at 255.  It refrains from making credibility determinations or weighing the evidence. *Id.*  "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof[]" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322; s*ee also Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994) (stating that the nonmoving party must "point[] to sufficient cognizable evidence to create material issues of fact concerning every element as to which [he/she] will bear the burden of proof at trial").  "[A] complete failure of proof concerning an essential element" of the non-movant's claim "necessarily renders all other facts immaterial." *Id.* at 323.  Thus, "[i]n such a situation, there can be 'no genuine [dispute] as to any material fact'" sufficient to survive the motion and judgment as a matter of law becomes appropriate. *Id.* at 322–23; *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) ("[W]here a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law.").

Courts must liberally construe the submissions of *pro se* litigants.  *See Hena v. Vandegrift*, 612 F. Supp. 3d 457, 472 (W.D. Pa. 2020) (citing cases, including *Haines v. Kerner,*

404 U.S. 519 (1972)). While such submissions are read to "raise the strongest arguments suggested therein," a court's "forgiving interpretation does not render immune from dismissal or summary judgment claims that lack procedural or factual viability." *Id.* (internal quotation marks and citations omitted). Thus, the same summary judgment standard that applies to litigants who are represented by counsel also applies to *pro se* litigants, and "[b]ald assertions unsubstantiated by record evidence will not defeat a well-supported motion for summary judgment." *Id.* (internal quotation marks and citations omitted).

## III.   ANALYSIS

### A. Vandervoort's claims under the ADA are meritless.

Vandervoort brings three decipherable claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, in her Second Amended Complaint: disability discrimination; failure to provide reasonable accommodations; and retaliation.[7]  (ECF No. 17, pp. 34–36, 39–40, 49–44).   The ADA prohibits discrimination based on disability against "qualified individual[s] on the basis of disability" as to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA considers a person disabled if they: "(A) [have] a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) [have] a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(1).  To be an individual with a disability, an individual is only required to satisfy one prong.  *See* 29 C.F.R. § 1630.2(g)(2). Under the ADA, discrimination includes the failure to provide a reasonable accommodation for

---

[7] Vandervoort's ADA claims against Treacy are improper as the ADA does not impose individual liability. *See Williams v. Pennsylvania Human Rels. Comm'n*, 870 F.3d 294, 299 n.27 (3d Cir. 2017).

"the known physical or mental limitations of an otherwise qualified individual with a disability," unless the individual's employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). In determining the appropriate reasonable accommodation for an individual, an employer may need "to initiate an informal, interactive process with the individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3).

   1. Disability discrimination claim

   To establish a prima facie case of disability discrimination, Vandervoort must prove that she is (1) a disabled person within the meaning of the ADA; (2) qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (3) discharged or adversely affected because of the disability. *Eshleman v. Patrick Indus.*, 961 F.3d 242, 245 (3d Cir. 2020) (citations omitted). Vandervoort's ADA claim fails because she has not made the threshold showing that she was disabled within the meaning of the ADA.

   Many of the emails written by Vandervoort to the School District that are contained in the record specifically state that she is "not disabled." (*See* e.g., R-85, R-148). Added to her own repeated admissions that she is not disabled, Vandervoort has not come forth with any evidence to prove that a mental or physical impairment substantially limited one or more of her major life activities. Vandervoort has no diagnosed breathing impairment. As to her diagnosis of "situational anxiety related to mask wearing and COVID" (R-93), a person needs more than a diagnosed impairment in order to be considered "disabled" under the ADA.[8] *See Bialko v.*

---

[8] Generalized stress does not rise to the level of disabled within the meaning of the ADA. *See Ashton v. Am. Tel. & Tel. Co.*, 225 F. App'x 61, 66 (3d Cir. 2007) (affirming grant of summary judgment where employee's acute stress disorder and generalized anxiety did not substantially limit the major life activities of thinking or working so as to constitute a disability under the

*Quaker Oats Co.*, 434 F. App'x 139, 142 (3d Cir. 2011) (citation omitted). Instead, a person must have "a physical or mental impairment that substantially limits one or more major life activities," must have "a record of such an impairment," or must have been "regarded as having such an impairment." 42 U.S.C. § 12102(1). No medical records are contained in the record before the Court that Vandervoort has such a disability.

In sum, the record fails to sufficiently provide evidence and demonstrate how Vandervoort was substantially limited from performing specific major life activities. There is no evidence of a record of impairment.[9] Vandervoort has not adduced evidence from which a reasonable jury could find she was disabled under the terms of the ADA.

To the extent Vandervoort argues that the School District "regarded" her as having a disability under the ADA because it approved her FMLA leave, this argument fails. "To be 'disabled' under the 'regarded as' portion of the ADA's definition of disability, [Vandervoort] must demonstrate either that: (i) although she had no impairment at all, [the School District] erroneously believed that she had an impairment that substantially limited major life activities; or (ii) she had a non-limiting impairment that [the School District] mistakenly believed limited a major life activity." *Parker v. Port Auth. of Allegheny Cty.*, 90 F. App'x 600, 603 (3d Cir. 2004). "In either case, the definition of 'substantially limits' remains the same as it does in other parts of the statute." *Id.*

---

ADA where the impairment was temporary, and employee did not suffer any negative long-term or permanent impact from the impairment).

[9] The United States Court of Appeals for the Third Circuit has determined that a "relatively short-term absence from work, without any long-term impairment, is generally held to be insufficient to create a record of disability." *Eshleman*, 554 F.3d at 437. Accordingly, Vandervoort's situational anxiety issue with facial coverings during the COVID-19 pandemic, which necessitated her taking FMLA leave, does not meet the threshold to establish a record of impairment under the ADA.

Granting Vandervoort FMLA leave does not prove that the School District regarded her as having a disability.   At most, the evidence shows that the School District was aware that Vandervoort suffered from situational anxiety which required her to take FMLA.   The School District approved Vandervoort's FMLA leave from August 17, 2021 to November 8, 2021.   (R-96).   Vandervoort, on October 31, 2021, requested an extension of her FMLA leave.   The School District granted her an extension of her leave until December 8, 2021.   (R-99–102).   It anticipated Vandervoort would return to work on December 9, 2021.   (R-127; R-150).   Aside from requiring Vandervoort to receive medical clearances, the School District never relayed any concerns about her ability to continue working for the School District.   Additionally, the record indicates that no School District personnel ever referred to Vandervoort as disabled.

For these reasons, Vandervoort failed to establish a prima facie case for disability discrimination, and the Court declines to discuss the remaining factors for Vandervoort's disability discrimination claim.[10]   Summary judgment will be entered in favor of Defendants as to Vandervoort's ADA discrimination claim.

### 2. Reasonable accommodation claim

Under the ADA, the failure to provide a reasonable accommodation is unlawful discrimination.   42 U.S.C. § 12112(b)(5)(A).   In alleging a failure to accommodate claim, Vandervoort had to show that: (1) she was disabled and the School District was aware of the disability; (2) she requested an accommodation or assistance; (3) the School District did not

---

[10] For the reasons that will be explained repeatedly in the following sections, the Court finds that the undisputed facts of record are such that Vandervoort was terminated due to her job abandonment, which had nothing to do with her alleged disability.

make a good faith effort to assist; and (4) she could have reasonably been accommodated.[11] *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006).   When an employer is adequately notified of an employee's disability and the employee requests an accommodation for that disability, the onus is on the employer to "engage the employee in the interactive process of finding accommodations."   *Id.*   Engaging in an "interactive process" requires reasonable efforts on the part of an employer to assist the employee and to communicate with the employee in good faith. *Megine v. Runyon*, 114 F.3d 415, 419–20 (3d Cir. 1997).

Having found in the previous section herein that Vandervoort failed to demonstrate that she had a disability as defined by the ADA, the Court will grant Defendants' motion for summary judgment as to her ADA reasonable accommodation claim.

The Court would further note that even if Vandervoort had adduced evidence in discovery that she qualified as a disabled person within the meaning of the ADA, no evidence supports her claim that the School District failed to reasonably accommodate her disability.   At most, prior to taking FMLA leave, the School District was made aware of her situational anxiety regarding face coverings.   The evidence of record is such that the School District began to engage in a good faith interactive process with Vandervoort at the start of the 2020-2021 school year to accommodate her concerns, but that an accommodation was rendered moot by the fact that Vandervoort was administratively transferred to a remote position with NACA due to staffing needs.   On September 1, 2020, Treacy informed Vandervoort via email that she was permitted to wear a face shield had she remained working in-person in the classroom, that the School District had received no medical information from Vandervoort, and that her assignment

---

[11] "Failure to accommodate claims are distinct from claims of disparate treatment and are not governed by the shifting-burden scheme set out in *McDonnell Douglas*." *Bielich v. Johnson & Johnson, Inc.*, 6 F. Supp. 3d 589, 617 (W.D. Pa. 2014).

was not a medical accommodation. (R-143). Vandervoort acknowledged that she understood this email to be another offer to engage in a discussion about a medical accommodation and that she had to provide medical information to receive a formal accommodation. (ECF No. 48, p. 11). Significantly, in a September 1, 2020 email to Treacy, Vandervoort stated, "I can not [sic] say I'm disabled because I'm not dishonest and it's the mask causing a problem. .... I will never say I'm disabled." (R-148). During the 2020-2021 school year, Vandervoort worked under a one-year contract with NACA. She sent no medical information to the School District during the school year and she made no further communications about her medical conditions or an accommodation. (ECF No. 48, pp. 8, 12).

As to what occurred at the expiration of her FMLA leave in December 2021, the record reflects that the School District attempted to engage in good faith in the interactive process. To the best of the Court's understanding, Vandervoort is arguing that when her FMLA was set to expire, in a December 8, 2021 email she stated, "I would like to know what reasonable accommodations you can offer me to continue my employment with NASD," and she expressed concerns about face coverings, vaccines, and testing. (R-132). In her Second Amended Complaint, Vandervoort claims that she wanted to work from home (ECF No. 17, p. 36), but the state of the record is such that no information exists that she conveyed this specific accommodation request to the School District. Regardless, upon being notified of Vandervoort's concerns and her possible request for accommodation, the School District sought further information from Vandervoort. Treacy informed Vandervoort by December 21, 2021 email,

> As you have previously provided a medical excuse that prevented you from working this school year as a result of a face covering mandate that is still in place, we are offering to extend your previously approved leave of absence. To do so, we need a letter from your healthcare provider that notes the condition which previously prevented you from working continues and that an extension of leave is requested until a certain date in time. In the alternative, if your condition no

longer prevents you from working, please provide a note from your healthcare provider indicating when you may be released to return to work. As noted in your original leave approval, you need to present a fitness for duty release from your doctor before you may return to work. If you need assistance in obtaining one, we can reach out to your provider if you provide us with permission to do so. We can get you a form to do so if you desire.

Again, we are not interested in harming you and have not threatened you. We are simply trying to follow up on previous directives from your healthcare provider which prevented you from working.

We are interested in accounting for your absences and providing staffing coverages for our students. As an employee, you need to account for your absences.

I thank you in advance for providing the requested documentation. We look forward to your eventual return to work if able.

(R.152–53).   Vandervoort never responded.   On January 4, 2022, Treacy again emailed Vandervoort explaining:

I wanted to reach out once again seeking documentation from you that either releases you to return to work or seeks a medically-supported extension of your previous leave of absence. As you are aware, your previous leave of absence expired on December 8, 2021. We have requested information from you for over a month to justify your absence or return you to work, but have not received anything. As noted in my December 21 email, we must provide staffing coverage for our students and your continued unaccounted absences make that difficult.

At this time, I ask that you provide the requested information by Friday, January 7, 2022, or we unfortunately will need to move forward with a disciplinary process for job abandonment.

We hope to hear from you and receive the requested documentation.

(R-152).  Vandervoort never responded.

Under the circumstances in this case, no reasonable jury could find that the School District was responsible for the breakdown of the interactive process or that it acted in bad faith. It was not unreasonable for the School District to solicit more specific information about Vandervoort's medical condition; she was on FMLA leave that was expiring and additional

information was necessary to ascertain if accommodations under the ADA were warranted. However, Vandervoort stopped participating in the process. The Third Circuit has made clear, in numerous decisions, that "an employer cannot be faulted if after conferring with the employee to find possible accommodations, the employee then fails to supply information that the employer needs or does not answer the employer's request for more detailed proposals." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir. 1999); *accord Petti v. Ocean Cty. Bd. of Health*, 831 F. App'x 59, 64 (3d Cir. 2020); *McGlone v. Philadelphia Gas Works*, 733 F. App'x 606, 611 (3d Cir. 2018). Vandervoort's failure to provide the requested information about her condition and her subsequent silence after her FMLA leave expired caused the breakdown in the interactive process. The School District never had an opportunity to propose (or refuse) an accommodation because Vandervoort abandoned the interactive process.

Summary judgment with be entered in favor of Defendants on the failure to accommodate claim.

3. <u>Retaliation claim</u>

The ADA prohibits an employer from retaliating against an employee by taking an adverse action against the employee because of their participation in an activity protected by the ADA (which can include requesting reasonable accommodations). *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188, 190–91 (3d Cir. 2003). To set forth a prima facie case of retaliation under the ADA, Vandervoort must show that (1) she engaged in a protected activity; (2) she was subject to an adverse employment action following or contemporaneous with the protected activity; and (3) a causal connection exists between the protected activity and the

adverse action.[12]  *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000).  A causal connection can be demonstrated by providing direct or circumstantial evidence of (1) unusually suggestive temporal proximity; (2) a pattern of antagonism following the protected activity; or (3) a showing that the reason for his alleged adverse action is pretextual.  *Leboon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007); *Krouse*, 126 F.3d at 503-05.  If the employee establishes a prima facie case for retaliation, the burden then shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action.  *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997).  If the employer meets this burden, the burden then shifts "back to the plaintiff to demonstrate that 'the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'"  *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (citation omitted).

Under the ADA, an employee has engaged in protected activity when they have "opposed any act or practice made unlawful [by the ADA] or because such an individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [the ADA]."  *EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 452 (3d Cir. 2015).  To establish a protected activity, Vandervoort had to make a request for a reasonable accommodation separate from [her] request for FMLA leave.[13]  Unlike an initial request for FMLA leave, "once a plaintiff

---

[12] "Unlike a plaintiff in an ADA discrimination case, a plaintiff in an ADA retaliation case need not establish that [s]he is a 'qualified individual with a disability.'"  *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997).

[13] Courts within our circuit have recognized "that 'FMLA leave is not a reasonable accommodation' under the ADA" but rather a request for protections under a separate statute.  *Capps v. Mondelez Glob. LLC*, 147 F. Supp. 3d 327, 340 (E.D. Pa. 2015), *aff'd*, 847 F.3d 144 (3d Cir. 2017) (quoting *Rutt v. City of Reading, Pa.*, Civil Action No. 13-4559, 2014 WL 5390428, at *3 (E.D. Pa. Oct. 22, 2014)).  This is because, by requesting FMLA leave, the employee is implicitly telling his employer that he has a "serious health condition that makes [him] unable to perform the functions of the position of such employee." 29 U.S.C. § 2612.  On

exhausts FMLA leave, a request for an extended leave of absence is a request for a 'reasonable accommodation' pursuant to the ADA." *McCall v. City of Philadelphia*, Civil Action No. 11-5689, 2013 WL 5823873, at *22 (E.D. Pa. Oct. 29, 2013), *aff'd*, 629 F. App'x 419 (3d Cir. 2015); *see also Lowenstein v. Catholic Health East*, 820 F. Supp. 2d 639, 647 (E.D. Pa. 2011) (DuBois, J.) (noting that while defendants' failure to consider plaintiff's FMLA request would not support an ADA claim, plaintiff's request for additional sick days following FMLA leave is a request for a reasonable accommodation). The undisputed evidence of record is that Vandervoort never requested an extension of her FMLA leave. She did not ask to push back her return date or request additional time to finalize her return paperwork.

In her Second Amended Complaint, Vandervoort claims that she requested to work from home at the end of her FMLA leave as an accommodation, and this was her protected activity. (ECF No. 17, p. 36).[14] However, the record does not contain any evidence that she specifically requested to work from home. Her December 8, 2021 email to School District Personnel is borderline incoherent and does not support her contention. (R-132). In fact, she specifically informed School District personnel on December 8, 2021 that, "I am aware of the Doctors note to return to work, but at this time I have not contacted my health care provider." (R-132). She

---

the other hand, an employee who requests a reasonable accommodation under the ADA is telling his employer that he "can perform the essential functions of the employment position" with some accommodation. 42 U.S.C. § 12111. "Thus, an employee who requests leave does not clearly communicate to her employer that she is disabled and desires an accommodation." *Rutt*, 2014 WL 5390428, at *4 n. 11 (citing *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3d Cir. 2010)) (the employee must make clear that she wants an accommodation). Because Vandervoort's request for FMLA leave was not a request for an accommodation under the ADA, it cannot be considered protected activity for the purposes of her ADA retaliation claims.

[14] Vandervoort also alleges that Defendants retaliated against her because she filed Case No. 21-cv-01264 in this Court and complained in August 2021 to the School District's superintendent about hiring policies, but she has failed to establish that these are activities protected under the ADA.

went on to state, "I would like to know what reasonable accommodations you can offer me to continue my employment with NASD." (R-132). As noted in the previous section, Vandervoort failed to respond to the School District's emails seeking further information to ascertain whether her medical condition fell within the purview of the ADA. In sum, Vandervoort has failed to establish that she engaged in a protected ADA activity.

Even if she had made such a showing, Defendants articulated a legitimate, non-retaliatory reason for her challenged termination – job abandonment. It is undisputed that Vandervoort exhausted her FMLA leave and was provided a return to work date. It is undisputed that Vandervoort did not return to work on December 9, 2021. None of Vandervoort's doctors communicated to School District personnel that further FMLA leave was necessary for her and no medical information was provided by her doctors that accommodations or modifications were necessary for Vandervoort to perform the functions of her job. After December 13, 2021, Vandervoort failed to respond to any School District personnel emails. She never reported to work. *Loudermill* proceedings were instituted against her on two separate occasions and Vandervoort chose not to attend. (ECF No. 48, pp. 32–33); (R-105–51); (P-219, 223). She was placed on disciplinary suspension on January 25, 2022, pending termination. (P-224). In early March 2022, Vandervoort was issued a notice of the Statement of Charges against her that culminated in the recommended termination of her employment. (P-225–30). She chose not to request a hearing before the board of school directors or proceed to arbitration under the provisions of her CBA. The School District's board of school directors terminated her employment effective March 23, 2022, based on the information contained in the Statement of Charges. (P-233).

Vandervoort has not adduced any evidence in discovery that the School District's non-discriminatory reason for her termination was pretextual. There is no evidence from which a reasonable jury could either disbelieve or discredit the School District's justification for termination, Vandervoort's job abandonment, or "believe discrimination was more likely than not a 'but for' cause of the adverse employment action." *Abels v. Dish Network Serv.*, LLC, 507 F. App'x 179, 183 (3d Cir. 2012) (citing *Fuentes*, 32 F.3d at 764). Vandervoort had to do more than "simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765.[15] Vandervoort has failed to establish a genuine issue of material fact regarding this claim.

Summary judgment will be entered in favor of Defendants as to Vandervoort's ADA retaliation claim.

**B. No viable Title VII discrimination claim exists.**

Vandervoort appears to be raising a gender discrimination claim. (ECF No. 17, pp. 42–43).[16] Title VII prohibits an employer from discriminating against an employee by taking an adverse action against them based on the employee's race, color, or gender (or other protected class). 42 U.S.C. § 2000e-2(a). To prevail on a claim for gender discrimination under Title VII where there is no direct evidence of discrimination, like here, a plaintiff must satisfy the three-

---

[15] As the Third Circuit has explained, federal courts are not a "super-personnel department" to correct purported employment actions. *Klimek v. United Steel Workers Local 397*, 618 F. App'x 77, 80 (3d Cir. 2015) (citation omitted).

[16] Vandervoort's Title VII claims against Treacy are improper as Title VII does not impose individual liability. *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) ("we are persuaded that Congress did not intend to hold individual employees liable under Title VII."); *Dici v. Com. of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996) ("[f]or the reasons previously given by the court in *Sheridan* and other courts of appeals, individual employees cannot be held liable under Title VII.").

step burden-shifting framework provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Ed.*, 470 F.3d 535, 539 (3d Cir. 2006). First, a plaintiff must establish a prima facie case of gender discrimination by demonstrating that (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) either members of the opposite sex were treated more favorably, or the adverse employment action occurred under circumstances that could give rise to an inference of intentional gender discrimination. *Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). If a plaintiff succeeds in establishing a prima facie case, the burden of production then "shifts to the defendant to offer a legitimate non-discriminatory [justification] for the adverse employment action." *Id.* (internal citations omitted). This burden is " 'relatively light' and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Id.* (citations omitted). Furthermore, at this stage, "the defendant need not prove that the articulated reason actually motivated its conduct." *Id.* (citation omitted). At the third step of the *McDonnell Douglas* framework, the burden of production shifts back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for actual discrimination. *Id.* (citation omitted).

Vandervoort has established that she is female, was qualified for her job, and was subject to an adverse employment action when she was terminated. Under the fourth prong of the prima facie analysis, Vandervoort must establish that either (1) members of the opposite sex were treated more favorably or (2) the adverse employment action occurred under circumstances that could give rise to an inference of intentional gender discrimination. Vandervoort has adduced no evidence in discovery that members of the opposite sex were treated more favorably. She does

not point to any evidence that male employees concluding their FMLA leave or males that abandoned their positions with the School District were treated differently than her. Vandervoort has not succeeded in showing that the adverse employment action occurred under circumstances that could give rise to an inference of intentional gender discrimination where the only evidence she has adduced is that a woman under the age of forty-five was given a position in the autistic support room once held by Vandervoort.

Even if Vandervoort had established a prima facie case of gender discrimination under Title VII, her claim fails under the remaining steps of the *McDonnell Douglas* burden-shifting framework. As discussed previously, the School District has a legitimate, non-discriminatory reason for terminating Vandervoort. Vandervoort has not come forth with any evidence that the School District's proffered reason for termination was pretextual.

Summary judgment will be entered in favor of Defendants as to Vandervoort's Title VII discrimination claim.

**C. No viable age discrimination claim exists.**

Vandervoort seems to be alleging in her Second Amended Complaint that the School District terminated her due to her age. (ECF No. 17, pp. 38–39).[17] According to Vandervoort, she was over the age of sixty when she was terminated. (ECF No. 44, p. 11; ECF No. 45, p. 16). The ADEA prohibits employers from "discharge[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

---

[17] An ADEA claim against Treacy is improper as the ADEA does not provide a basis for liability against individual defendants. *See Parikh v. UPS*, 491 F. App'x 303, 308 (3d Cir. 2012) ("Neither Title VII nor the ADEA provides for individual liability."); *Hill v. Borough of Kutztown*, 455 F.3d 225, 246 n.29 (3d Cir. 2006) ("Hill did not bring an ADEA claim against Mayor Marino himself, nor could he have because the ADEA does not provide for individual liability.").

ADEA claims in which the plaintiff relies on circumstantial evidence, like Title VII gender discrimination claims, are subject to the *McDonnell Douglas* burden-shifting framework. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). Thus, to succeed on a claim of age discrimination under the ADEA, a plaintiff must first establish that she (1) was over the age of 40; (2) was qualified for the position she sought to retain or attain; (3) suffered an adverse employment action; and (4) was ultimately replaced by a younger person so as to support an inference of a discriminatory motive. *Id.* Once a plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employer's action. *Fuentes*, 32 F.3d at 763. "The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Id.* "Once the employer answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." *Id.*

While Vandervoort is over the age of 40, qualified for her position, and suffered an adverse employment action, no evidence of record exists as to who replaced her as a paraprofessional in the classroom setting. Prior to her FMLA leave, Vandervoort was working remotely for a year with NACA. No evidence of record exists as to who replaced Vandervoort in that remote position. Additionally, no evidence of record exists as to who replaced Vandervoort as an in-person paraprofessional at Hosack Elementary School. Vandervoort claims that while she was on FMLA leave, a woman under the age of fifty-five was given a position in the autistic support room that she once held. (ECF No. 44, pp. 11–12). Even if Vandervoort was actually

replaced by younger paraprofessional, as noted above, the School District offered a legitimate, nondiscriminatory reason for its action – Vandervoort abandoned her job.   Vandervoort has failed to meet her burden of showing pretext.   At most, she provides conclusory allegations that she was terminated due to her age, which is insufficient to establish pretext. *See Willis*, 808 F.3d at 647 ("[Plaintiff]'s attempt to cast [Defendant]'s articulated reasons as pretext are unsuccessful because she does not point to evidence that demonstrates [Defendant] did not in fact rely on its articulated reasons when terminating her employment.").

Summary judgment will be entered in favor of Defendants as to Vandervoort's age discrimination claim.

**D.  No viable FMLA claims exist.**

Vandervoort brings a FMLA interference claim as well as a FMLA retaliation claim against Defendants.[18]   (ECF No. 17, pp. 45–46).   Under the FMLA, an eligible employee is

---

[18] Under the FMLA, an "employer" includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii). The Third Circuit has concluded that a supervisor at a public agency may be liable under the FMLA.  *Haybarger v. Lawrence Cnty. Adult Prob. and Parole*, 667 F.3d 408, 417 (3d Cir. 2021); *see also* 29 C.F.R. § 825.104(d) (providing that "individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of FMLA.").   To determine whether or not an individual is subject to FMLA liability, courts in the Third Circuit use the "economic reality" test which "depends on the totality of the circumstances rather than 'technical concepts of the employment relationship.'" *Id.* at 418 (quoting *Hodgson v. Arnheim & Neely, Inc.*, 444 F.2d 609, 612 (3d Cir. 1971)). Relevant factors include "whether the individual '(1) had the power to hire and fire the employee[ ], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'"  *Id.* (alteration in original) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).
Treacy is the Director of Human Resources for the School District.   The record sufficiently demonstrates that she was the designated manager exerting control over Vandervoort's FMLA leave and that she authored the *Loudermill* Conference Conclusion letter (P-223–24) and termination letter (P-233).   Giving all reasonable inferences to Vandervoort, the Court finds that the record establishes that Treacy had supervisory authority over Vandervoort such that individual FMLA liability could extend to her.

entitled to a total of twelve work weeks of leave during any twelve month period because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.  29 U.S.C.S. § 2612(a)(1)(D).  The statute contains "two relatively distinct provisions."  *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).  First, the FMLA prohibits an employer from taking action "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1).  Second, the FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the Act.  29 U.S.C. § 2615(a)(2).

To establish an FMLA interference claim, a plaintiff must show that they were entitled to benefits under the FMLA and that they were denied these benefits.  *Sommer v. The Vanguard Group*, 461 F.3d 397, 399 (3d Cir. 2006) (citing *Callison*, 430 F.3d at 119).  This analysis can be further broken down into five elements: "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA."  *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014) (citations omitted).  Interference, or denial of FMLA benefits, can include failing to reinstate an employee to their prior position, unless for a reason unrelated to their leave.  *Conoshenti v. Public Svc. Elec. & Gas Co.*, 364 F.3d 135, 141 (3d Cir. 2004) (citing 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.216(a)(1)).

"An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA."  *Callison*, 430 F.3d 120.

Here, the School District provided Vandervoort with FMLA leave from August 17, 2021 to November 8, 2021. (R-96). When Vandervoort requested an extension of her FMLA leave, the School District granted her request and extended her FMLA leave until December 8, 2021. (ECF No. 48, p. 25); (R-100). As to how she was paid during this period, the School District advised Vandervoort that her accumulated sick leave had to be used before unpaid leave under the FMLA pursuant to her CBA. (R-94). It also provided her with these calculations:

> 8/17/21PM – 8/19/21 — 2.5 personal days
> 8/23/21 – 9-22-21 - unpaid FMLA
> 9/23/21 — 10/18/21(AM) — 17.5 sick days
> 10/18/21(PM) - .5 personal day
> 10/19/21 — 11/2/21(AM)— 8.5 sick days
> 11/2/21(PM) — 12/8/21 — approved unpaid leave

(R-128). After her FMLA leave was exhausted on December 8, 2021, the undisputed evidence of record is that Vandervoort chose not to return to work on December 9, 2021. Vandervoort did not ask to push back her return date or request additional time to finalize her return paperwork. She never requested an extension of her FMLA leave. In fact, she specifically informed School District personnel on December 8, 2021 that, "I am aware of the Doctors note to return to work, but at this time I have not contacted my health care provider." (R-132). None of Vandervoort's doctors communicated to School District personnel that further FMLA leave was necessary.

"Generally, courts within this Circuit and others have been reluctant to extend the ability of a Plaintiff to bring FMLA interference claims, or extending the FMLA's right to reinstatement beyond twelve weeks, when the employee takes leave beyond the twelve-week FMLA entitlement period and is subsequently terminated." *Thurston v. Cherry Hill Triplex*, 941 F. Supp. 2d 520, 529 (D.N.J. 2008) (granting summary judgment for defendants on FMLA interference claim where plaintiff was granted and utilized her twelve-week FMLA entitlement); *see e.g. Banner v. Fletcher*, 834 F. App'x 766, 769–70 (3d Cir. 2020) ("Because the record

shows that [plaintiff] had exhausted her leave ..., [defendant] is entitled to summary judgment on [the interference] claim."). Vandervoort has pointed to no evidence of record that Defendants' calculation of her leave period was incorrect. The evidence of record is clear that Vandervoort exhausted her benefits at the time of her termination and is therefore unable to establish a viable FMLA interference claim.

As to her FMLA retaliation claim, Vandervoort had to adduce evidence that (1) she invoked an FMLA right; (2) she suffered an adverse employment action; and (3) her leave or exercise of her FMLA rights was a motivating factor in that adverse action. *Ross v. Gihuly*, 755 F.3d 185, 193 (3d Cir. 2014). As with the ADA discrimination and retaliation provisions discussed above, an employer can rebut this prima facie case by articulating a legitimate reason for the adverse employment action. *Krouse*, 126 F.3d at 500. If an employer meets that standard, the burden shifts back to the plaintiff to rebut the employer's explanation of the reasoning behind the adverse employment action. *Id.*

Vandervoort was terminated on March 23, 2022. Her FMLA leave expired on December 8, 2021, and it is undisputed that she did not request further FMLA leave.[19] The record has failed to raise any inference of a causal link between the end of her FMLA leave and her termination. Defendants articulated a facially legitimate, non-discriminatory reason for Vandervoort's termination – job abandonment. As discussed repeatedly herein, Vandervoort has

---

[19] In her brief in opposition to Defendants' summary judgment motion, Vandervoort claims that her FMLA benefit start date should have been September 10, 2021, and her end date December 10, 2021. Additionally, she states that she "requested an additional 4 weeks due to the mask policy still being required, which would have taken her to January 21." (ECF No. 45, p. 17). Not only does no evidence of record support Vandervoort's calculations, but no evidence has been obtained during discovery that Vandervoort, in December 2021, requested an extension of her FMLA leave. In fact, the evidence of record shows that she refused to obtain the necessary medical documentation or communicate with School District personnel to obtain a continuance of her FMLA leave.

failed to meet her burden of showing pretext.  Vandervoort failed to establish a viable FMLA retaliation claim.

Summary judgment will be entered in favor of Defendants as to Vandervoort's FMLA claims.

### E.  No viable 42 U.S.C. §§§ 1981, 1983, or 1985 claims exist.

1. <u>Section 1981 claims</u>

Section 1981 provides: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a).  This statute allows a plaintiff who belongs to a racial minority to bring a claim for purposeful race-based discrimination.  To establish a right to relief under § 1981, a plaintiff must show "(1) that he belongs to a racial minority; (2) 'an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981[.]'"  *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002) (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)).  The evidence before the Court is that Vandervoort is a Caucasian woman; Vandervoort has admitted that she is a "white woman."[20]  (ECF No. 45, p. 18).   Quite simply, she is not a member of a protected class for § 1981 claims.  Vandervoort cannot bring a claim under § 1981. Summary judgment will be entered in favor of Defendants as to Vandervoort's § 1981 claims.

2. <u>Section 1983 claims</u>

Section 1983, which functions as a "vehicle for imposing liability against anyone who, under color of state law, deprives a person of 'rights, privileges, or immunities secured by the Constitution and laws.'"  *Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel*, 570 F.3d 520, 525

---

[20] In one of her pleadings, Vandervoort asserts she is of "mixed nationality" consisting of "Swedish, Norwegian, Dutch and German."  (ECF No. 44, p. 13).

(3d Cir. 2009) (quoting 42 U.S.C. § 1983). It does not create substantive rights by its own terms, but it instead provides remedies for violations of rights that are established elsewhere in the Constitution or in federal law. *See Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under § 1983, two criteria must be met: 1) the conduct complained of must have been committed by a person acting under color of state law and 2) the conduct must deprive the plaintiff of rights secured under the Constitution or federal law. *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

In her previous case before the Court, Case No. 2:21-cv-01264, Vandervoort brought various constitutional claims under § 1983 related to the School District's policy requiring face coverings. Ultimately the Court held:

> All of Vandervoort's claims relating to the universal masking mandate of the School District became moot for reasons outside of the parties' control. In accordance with the CDC's revised masking guidance, the Third Circuit's Order on March 1, 2022 at Case Nos. 22-1160 and 22-1299, and Judge Horan's Order on March 2, 2022 at Case No. 2:22-cv-00055, the School District has returned to its previous policy of optional masking. (ECF No. 27, p. 2). Vandervoort admits that "the masking policy is over." (ECF No. 28). Because the universal masking mandate has expired in the School District, there is no relief the Court can grant Vandervoort. *Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 698 (3d Cir. 1996).
>
> In the Third Circuit's March 1, 2022 Order at Case Nos. 22-1160 and 22-1299, it held that "for essentially the same reasons we explained in *County of Butler v. Governor of Pennsylvania*, 8 F.4th 226 (3d Cir. 2021), the exception [for questions "capable of repetition yet evading review"] does not apply." In other words, the Third Circuit refused to address the underlying constitutional claims brought by litigants challenging masking mandates in school districts. Here, the Court is extremely reluctant to do so.

(Case No. 2:21-cv-01264, ECF No. 29, p. 12–13) The Court will not revisit the issue of the School District's face covering policy during the COVID-19 pandemic; it stands by its previous analysis in its Memorandum Opinion at Case No. 2:21-cv-01264. (*Id.* at 13–18).

a.  *Fourteenth Amendment claims*

Vandervoort has failed to adduce evidence as to legally viable procedural or due process claims under the Fourteenth Amendment.

In order to state a claim under § 1983 for deprivation of procedural due process rights, "a plaintiff must allege that (1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [her] did not provide 'due process of law.'" *Hill*, 455 F.3d at 234 (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).  Giving Vandervoort the benefit of all reasonable inferences, the Court will assume that she has an enforceable property right to employment as the School District previously conceded this point in Case No. 2:21-cv-01264.

The next question is whether the available procedures provide due process of law. Procedural due process is a flexible inquiry, based on the circumstances.  The evidence of record here is that the pre-deprivation procedures were sufficiently robust. The School District approved Vandervoort's FMLA leave from August 23, 2021 through December 8, 2021.  It is undisputed that Vandervoort exhausted her FMLA leave and was provided a return to work date of December 9, 2021. It is undisputed that Vandervoort did not return to work on December 9, 2021.  None of Vandervoort's doctors communicated to School District personnel that further FMLA leave was necessary for Vandervoort and no medical information was provided by her doctors that accommodations or modifications were necessary for Vandervoort to perform the functions of her job.  After December 13, 2021, Vandervoort failed to respond to any School District personnel emails.  She never reported to work.  *Loudermill* proceedings were instituted against her on two separate occasions and Vandervoort chose not to attend either proceeding. (ECF No. 48, pp. 32–33); (R-105–51); (P-219, 223).  She was placed on disciplinary suspension

on January 25, 2022, pending termination.  (P-224).  In early March 2022, Vandervoort was issued a notice of the Statement of Charges against her.  (P-225–30).  She was specifically informed that termination proceedings were being commenced against her because:

> Vandervoort engaged in conduct in violation of the Pennsylvania Public School Code Section 514, 24 P.S. §5-514, constituting neglect of duty, improper conduct, willful violation of or failure to comply with the school laws of the Commonwealth, including established policy of the Board of School Directors, and abandonment of her position, that fell far short of the standard expected of an employee of the North Allegheny School District, which is set out specifically within this Statement of Charges.

(P-225).[21]  Vandervoort chose not to request a hearing before the board of school directors or proceed to arbitration under the provisions of her CBA.  The School District's board of school directors terminated her employment effective March 23, 2022, based on the information contained in the Statement of Charges.  (P-233).  Thus, the pre-deprivation procedures provided Vandervoort with extensive due process.  Furthermore, the post-deprivation procedures were more than adequate.  She apparently pursued an unsuccessful case with the EEOC.  Vandervoort could have complied with the administrative remedies set forth in Pennsylvania's Public School Code to challenge her termination, after which she could have appealed to the Pennsylvania Commonwealth Court.

---

[21] Section 514 of the Pennsylvania Public School Code governs "removal." 24 P.S. § 5-514.  It applies generally to "officers, employees, or appointees" of a school district, and states in pertinent part:

> The board of school directors in any school district, except as herein otherwise provided, shall after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove any of its officers, employees, or appointees for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct.

24 P.S. § 5-514.

In sum, Vandervoort has failed to advance a legally viable procedural due process claim. She has failed to come forth with any evidence that the pre-deprivation and/or post-deprivation procedures were inadequate.  Summary judgment will be entered in favor of Defendants as to Vandervoort's procedural due process claims.

Vandervoort fails to specifically state what substantive due process violation occurred. Substantive due process protects only certain "fundamental" liberty interests.  *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).  Public employment is not a fundamental interest entitled to substantive due process protection.  *See Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 142–43 (3d Cir. 2000).  Thus, Vandervoort's public employment with the School District is not a fundamental interest under the United States Constitution and she cannot state a substantive due process claim on this basis as a matter of law.  Summary judgment will be entered in favor of Defendants as to Vandervoort's substantive due process claims.

### b. First Amendment claims

The First Amendment to the United States Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. Amend. I.  "A public employee's statement is protected by the First Amendment when: (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made." *Flora v. Cty. of Luzerne*, 776 F.3d 169, 174 (3d Cir. 2015) (citations and internal quotation marks omitted). An employee suing her public employer under the First Amendment's Speech Clause must show

that "she spoke as a citizen on a matter of public concern." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 386 (2011) ("If an employee does not speak as a citizen, or does not address a matter of public concern, a federal court is not the appropriate forum ...."). When employees "make statements pursuant to their official duties," they are not "speaking as citizens for First Amendment purposes," such that the speech is not of public concern and the First Amendment does not prohibit as retaliatory subsequent employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). "Speech implicates a matter of public concern if the content, form, and context establish that the speech involves a matter of political, social, or other concern to the community." *Miller v. Clinton Cnty.*, 544 F.3d 542, 548 (3d Cir. 2008) (citing *Connick v. Myers*, 461 U.S. 138, 146–148 (1983)). Although "speech that relates solely to mundane employment grievances does not implicate a matter of public concern," *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 467 (3d Cir. 2015), "governmental inefficiency and misconduct is a matter of considerable significance." *Garcetti*, 547 U.S. at 425.

To assert a retaliation claim under § 1983 predicated on the First Amendment, a plaintiff must show "(1) that [she] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2012) (citations omitted). "[T]he 'critical question' for determining whether a public employee's speech is protected under the First Amendment 'is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.'" *Pasqua v. Cnty. of Hunterdon*, 721 F. App'x 215, 221 (3d Cir. 2018) (quoting *Lane v. Franks*, 573 U.S. 228, 239 (2014)).

Vandervoort has failed to show that her speech – i.e., her December 8, 2021 email to Goehring, which in part asked the District to accept full liability for numerous complex terms in relation to vaccines and possible harms from COVID-19 – was protected by the First Amendment.[22] No facts of record show that Vandervoort spoke in a public forum in her capacity as a private citizen. No evidence exists that her email was forwarded to the superintendent or school board members. In fact, no evidence has been adduced that Defendants prevented Vandervoort from exercising her views related to COVID-19. Goehring forwarded the email to Treacy who then emailed Vandervoort to seek further information about Vandervoort's medical condition and explained "we have made no mention of vaccines or testing in our requests to you." (R-152–53). Lastly, the School District's reasons for terminating Vandervoort, as discussed repeatedly herein, had nothing to do with Vandervoort's views on COVID-19 and the School District's policy requiring face coverings. She was terminated because she abandoned her job. Vandervoort has come forth with no evidence of a retaliatory animus.

---

[22] The First Amendment protects "the abridgment only of 'speech.'" *Texas v. Johnson*, 491 U.S. 397, 404 (1989). The Supreme Court has limited First Amendment protections to "inherently expressive" conduct. *Rumsfeld v. Forum for Acad. and Institutional Rights,* 547 U.S. 47, 66 (2006) ("*FAIR*"). To qualify, an action must satisfy two elements: the actor must "inten[d] to convey a particularized message," and there must be a high "likelihood" that "the message [will] be understood by those who view[ ] it." *Johnson*, 491 U.S. at 404 (quoting *Spence v. Washington*, 418 U.S. 405, 410-11 (1974)). The first element does not pose a high bar. To satisfy the second element, which is harder to do, a viewer must be able to understand the message from the conduct alone. *FAIR*, 547 U.S. at 66. If some "explanatory speech is necessary," the conduct does not warrant protection; otherwise, a party "could always transform conduct into 'speech' simply by talking about it." *Id.*

The record here does not contain any evidence that Vandervoort refused to wear a face covering with an intent to convey a particularized message. She also cannot satisfy the second element because a reasonable observer would not understand her message simply from seeing her unmasked in the school setting. "Going maskless is not usually imbued with symbolic meaning." *Falcone v. Dickstein*, 92 F.4th 193, 207 (3d Cir. 2024). Thus, Vandervoort's refusal to wear a face covering is not constitutionally protected conduct.

Summary judgment will be entered in favor of Defendants as to Vandervoort's First Amendment claims.

### c. *Fifth Amendment claim*

The nature of Vandervoort's Fifth Amendment claim is indecipherable from the allegations in her Second Amended Complaint.[23]  To the extent she is raising some sort of due process claim pursuant to the Fifth Amendment, it fails because "the Due Process Clause of the Fifth Amendment only applies to federal officials." *Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013) (citing *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983)). The Fifth Amendment provides no viable cause of action against state and municipal actors. Because Defendants as not federal actors, the Fifth Amendment's due process clause is inapplicable to them.   Summary judgment will be entered in favor of Defendants as to Vandervoort's Fifth Amendment claim.

### 3. <u>Section 1985 claims</u>

To state a claim under § 1985(3), a plaintiff must allege, "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or

---

[23] The Fifth Amendment provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V.

deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (citations omitted).   No evidence exists in the record that supports a claim under § 1985(3).   Vandervoort has failed to come forth with evidence that addresses the period of the conspiracy, the object of the conspiracy, and the actions of the alleged co-conspirators taken to achieve that purpose.

Further, the School District is an arm of the state and not a person.   It cannot conspire to cause or neglect to prevent the deprivation of a person's civil rights.   As to Treacy, Vandervoort has failed to ascertain any evidence that indicates Treacy entered into any agreement or plan with others to deprive Vandervoort of her constitutional rights, and Vandervoort does not allege sufficient facts to show that a conspiracy existed.   There are no factual allegations to suggest that Treacy was motivated by discriminatory animus to deprive Vandervoort of equal protection of laws.

Vandervoort's conclusory allegations of deprivations of constitutional rights are insufficient to state a § 1985(3) claim.   Summary judgment will be entered in favor of Defendants as to Vandervoort's conspiracy claims.

### F.  The Court will not exercise supplemental jurisdiction over the state law claims.

A district court "may decline to exercise supplemental jurisdiction" over state law claims if it "has dismissed all claims over which it has original jurisdiction[,]" 28 U.S.C. § 1367(c)(3), unless considerations of judicial economy, convenience, or fairness to the parties provide an affirmative justification for exercising supplemental jurisdiction. *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).   The Court finds that no factors or extraordinary circumstances exist that would warrant it exercising supplemental jurisdiction over Vandervoort's state law claims (e.g., intentional infliction of emotional distress, breach of contract, wrongful termination, and

violation of Article I §§ 1 and 7 of the Pennsylvania constitution).  It will dismiss her state law claims without prejudice for Vandervoort to assert them in state court.[24]

## IV.   CONCLUSION

For the foregoing reasons of law and fact, the Court will grant Defendants' motion for summary judgment.  Orders of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Date: _10/7/24_

---

[24] The Court would note that Vandervoort has failed to adduce evidence to support a breach of contract claim.  The material facts for a breach of contract claim are (1) there was a valid contract between the parties; (2) the defendant breached the contract; and (3) the plaintiff suffered damages as a result of defendant's breach.  *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010).  Vandervoort seems to rely on her annual assignment notice as a paraprofessional to argue that a binding employment contract existed between her and the School District for the 2021-2022 school year.  (ECF No. 45, pp. 19–20).  However, the record contains no employment contract for Vandervoort, and the pages of the CBA relevant to paraprofessional chapter that she has attached as part of her Appendix (P-258–62) have nothing to do with contractual terms of employment.  Vandervoort has failed to come forth with any evidence as to a written employment contract and its terms as to termination of her employment.  Without the existence of such a contract, no viable breach of contract claim exists.